IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DUSTIN DONLEY CONSTRUCTION SERVICES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> JOSEPH AARON ROSENTHAL, an individual, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) Case No. CIV-22-1010-SLP |

**O R D E R**

Before the Court is the Motion to Stay Action and Compel Arbitration [Doc. No. 18] filed by Defendants Joseph Aaron Rosenthal and ASC Group, LLC (the "ASC Defendants").[1] Plaintiff, Dustin Donley Construction Services, LLC ("Donley Construction") has responded, [Doc. No. 21], and Defendants' Reply was stricken as untimely. *See* [Doc. No. 22]. The matter is fully briefed and ready for determination.

**I.    Introduction**

This action involves claims for fraud, conspiracy to commit fraud, and civil RICO associated with an alleged fraudulent line of credit financing scheme. *See* Am. Compl. [Doc. No. 10]. Donley Construction's managing member, Dustin Donley, states the events at issue began when he found an online advertisement for business lines of credit and filled out an application. Aff. [Doc. No. 20-1] ¶ 3. Mr. Donley was then contacted by two

---

[1] The ASC Defendants separately filed a Declaration [Doc. No. 19] and a Memorandum of Law [Doc. No. 20] in support. The Court refers to these filings collectively as the "Motion," but citations to the record reflect the corresponding ECF number and pagination.

individuals purportedly working for an entity called "Oak Capital Group", who indicated they were able to approve Donley Construction for a $10 million line of credit. *Id.* ¶¶ 5-9.

One of the individuals followed up by email, stating "Oak" had allocated funds for the line of credit. *Id.* ¶¶ 8-9; *see also* Email [Doc. No. 21-2] at 1. The email attached a "Revolving Credit Agreement" to be entered into between Donley Construction and an entity known as "Pine Equities." Aff. [Doc. No. 21-1] ¶ 10; *see also* Agreement [Doc. No. 21-2] at 2. Mr. Donley signed this first agreement, which does not contain an arbitration provision. *See id.* at 3-4.

After Mr. Donley signed the initial agreement, the Oak Capital representatives stated his company would need to build credit history with a related company called "DFG." Aff. [Doc. No. 21-1] ¶¶ 12-13. They explained Donley Construction would need to accept funds from DFG into its bank account, and then funds would be withdrawn from Donley Construction's account. *Id.* at ¶ 14. They also said Donley Construction would have to wire money from its account to DFG. *Id.* ¶ 15.

On February 15, 2022, Mr. Donley signed two separate contracts titled "Standard Merchant Cash Advance Agreement," both of which are attached to the ASC Defendants' Motion and Donley Construction's Response. *See id.* ¶¶ 17-18; *see also* [Doc. Nos. 19-2, 19-3]; [Doc. Nos. 20-3, 20-4].[2]  The Agreements state that they are entered "by and between DFG ('DFG') and . . . Dustin Donley Construction Services, LLC." [Doc. Nos.

---

[2] Donley Construction's counsel is reminded to comply with Local Civil Rule 7.1(n) in future filings: "No response . . . brief shall include an exhibit or attachment that is already included with the motion under consideration; reference shall instead be made to the exhibit or attachment to the motion under consideration, including the ECF Document Number."

2

19-2, 19-3]. Each agreement contains an identical arbitration provision, which reads, in pertinent part:

> Any action or dispute relating to this Agreement or involving DFG on one side and any Merchant or any Guarantor on the other, including, but not limited to issues of arbitrability, will, at the option of any party to such action or dispute, be determined by arbitration before a single arbitrator . . . Any arbitration relating to this Agreement must be conducted in the Counties of Nassau, New York, Queens, or Kings in the State of New York . . . [N]otwithstanding any provision in this Agreement to the contrary, all matters of arbitration relating to this Agreement will be governed by and construed in accordance with the provisions of the Federal Arbitration Act, codified as Title 9 of the United States Code . . . The arbitration agreement contained in this Section may also be enforced by any employee, agent, attorney, member, manager, officer, subsidiary, affiliate entity, successor, or assign of DFG.

[Doc. Nos. 19-2, 19-3] at 9-10.

The same day Mr. Donley signed the Agreements, DFG deposited funds into Donley Construction's account at a bank in Enid, Oklahoma. Am. Compl. [Doc. No. 10] ¶¶ 32-33. The next day, DFG began withdrawing funds from the account. *Id.* ¶¶ 35-36. Around the same time, Donely Construction wired $188,874.00 to an account owned by DFG at Optimum Bank in Florida. *Id.* ¶¶ 37-40.

Over the next few weeks, DFG continued to withdraw money from Donley Construction's account, and Donley Construction wired additional funds, all while DFG's representatives assured Mr. Donley the funds would be returned. *See id.* ¶¶ 41-50. Mr. Donley began to question whether he was being defrauded and discussed turning the issue over to law enforcement, but the DFG representatives continued to reassure him the funds would be returned. *See id.* ¶¶ 45-53. Ultimately, DFG stopped responding, and Donley Construction lost a total of $160,786.00. *Id.* ¶¶ 53-55.

On November 18, 2022, Donley Construction filed this action, asserting claims for fraud, conspiracy to commit fraud, and civil RICO. Compl. [Doc. No. 1] ¶¶ 57-86. At that time, Donley Construction was not able to identify Pine Equities, DFG, Oak Capital, or the two individuals who Mr. Donley spoke with, so it named those Defendants "John Doe[s]" 1-5. *See id.* ¶¶ 2-6. The Court entered an Order granting Donley Construction leave to conduct early discovery regarding the identities of the Doe Defendants. *See* [Doc. No. 4].

Donley Construction discovered the identities of ASC Group and Mr. Rosenthal after issuing a Subpoena to the bank in Florida where funds were wired. *See* Am. Compl. [Doc. No. 10] at 59-61. It filed an Amended Complaint naming the ASC Defendants, alleging ASC Group is also known as "DFG." *See id.* ¶¶ 2-3. After service, the ASC Defendants filed the Motion to Compel Arbitration presently at issue [Doc. No. 18].

## II.   Governing Law

The Federal Arbitration Act (FAA) provides: "an agreement in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[3] When "the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. But when "the making of the arbitration agreement . . . [is] in issue, the court shall proceed summarily to the trial thereof." *Id.*

---

[3] The parties do not dispute that the FAA applies to the instant dispute.

Where the "making" of the agreement is at issue, courts within the Tenth Circuit apply a framework "similar to summary judgment practice":

> [T]he party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith. When a quick look at the case reveals that no material disputes of fact exist, a district court may decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration.

*BOSC, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017) (internal citations and quotation marks omitted). As set forth below, the Court finds the undisputed, relevant, and substantiated facts establish arbitration must be compelled.[4]

### III. Discussion

The primary dispute between the is parties is whether the Court, as opposed to the arbitrator, should decide the issues raised regarding arbitrability. *See* Mot. [Doc. No. 20] at 5-6; *see also* Resp. [Doc. No. ] at 7-11.[5]

---

[4] The Court notes at the outset that little evidence has been presented regarding formation. The ASC Defendants attach an affidavit from Mr. Rosenthal stating the parties entered into the Agreements, along with the Agreements themselves, while the relevant evidence from Donley Construction primarily consists of an affidavit from Mr. Donley restating the allegations in the Amended Complaint—very few of which actually relate to the Agreements. *See* [Doc. Nos. 19, 19-2, 19-3, 21-1].

[5] Importantly, both Agreements broadly provide: "[a]ny action or dispute relating to this Agreement or involving DFG on one side and any Merchant . . . on the other, *including, but not limited to issues of arbitrability*, will . . . be determined by arbitration before a single arbitrator." [Doc. Nos. 19-2, 19-3] at 9 (emphasis added). Donley Construction wholly fails to address this provision, commonly referred to as a "delegation" clause. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

### A. Formation

As it pertains to who must decide, the "issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006). "The issue of whether an arbitration agreement was formed between the parties must always be decided by a court, regardless of whether the alleged agreement contained a delegation clause." *Fedor v. United Healthcare, Inc.*, fedr, 1105 (10th Cir. 2020); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) ("[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide."); *Spahr v. Secco*, 330 F.3d 1266, 1270 (10th Cir. 2003) ("[A] court may compel arbitration of a particular dispute under § 4 of the FAA only when satisfied that the 'making' of the agreement to arbitrate is not at issue." (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967))).[6]

On the other hand, challenges to the *validity* of an agreement as a whole—such as illegality or fraudulent inducement—do not go to the "making" of the agreement to arbitrate and are decided by the arbitrator, rather than the Court. *See Cardegna*, 546 U.S. at 445-49 (illegality of the contract as a whole must be decided by the arbitrator); *Prima Paint*, 388 U.S. at 403-04 (argument regarding fraudulent inducement as to the contract as a whole must go to the arbitrator, while fraud in the inducement as to the arbitration

---

[6] The presumption in favor of arbitration that applies to the scope of an arbitration agreement "disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002).

provision itself may be decided by the court); *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1211 (10th Cir. 2016) (challenge to the agreement as based on illusory promises went to the agreement as a whole and should be decided by the arbitrator).

Donley Construction's challenge rests solely on 15 Okla. Stat. § 28, which provides: "[i]t is essential to the validity of the contract, not only that the parties should exist, but that it should be possible to identify them." Resp. [Doc. No. 21] at 8-9.[7] It maintains the Standard Merchant Cash Agreements do not adequately "identify" DFG because the Agreements do not list its address, its state of formation, or any affiliated entity. Resp. [Doc. No. 21] at 8-9. It also asserts there is no evidence of DFG's affiliation with ASC, and nobody signed the agreements on behalf of DFG. *Id.* at 9-10.

As an initial matter, the nature of Donley Construction's challenge is not entirely clear. *See* Resp. [Doc. No. 21] at 7-11. On one hand, it "disputes the very existence of a contract." *See id.* at 8, 11 (asserting "there was never an agreement to arbitrate in the first instance" and "a contract cannot be formed under the circumstances."). On the other hand, it challenges the "validity" of the Agreements. *Id.* at 10 (arguing "there be no valid contract as a whole if the parties were not identifiable" and "there could also be no valid arbitration

---

[7] Donley Construction asserts Oklahoma contract law applies to the present dispute, *id.* at 8, and the ASC Defendants make no argument regarding choice of law or applying any state substantive law. Accordingly, the Court considers Oklahoma law, although the result would be the same even if New York law were to apply. *See* n. 14, infra.

7

contract even if the arbitration clauses are viewed as severable. . .").[8]  That difference is crucial, because the Court may decide the issue under the present circumstances only if it actually relates to formation.

Although sometimes labeled as such, Donley Construction does not substantively challenge formation of the Agreements.  The statute it relies on specifically states identifiability of a party is "essential to the *validity* of the contract", 15 Okla. Stat. § 28— but issues of validity are committed to the arbitrator.  *See Cardegna*, 546 U.S. at 445-46 ("the issue of the contract's validity is considered by the arbitrator in the first instance.").[9]  Donley Construction cites no authority indicating identifiability of the parties in § 28 pertains to formation rather than validity, and its conclusory statement that "Oklahoma law expressly says a contract cannot be formed under such circumstances" lacks any legal argument or authority in support.  Resp. [Doc. No. 21] at 11.  Accordingly, Donley Construction fails to connect the issues it raises to a legal argument relevant to formation

---

[8] Donley Construction fails to develop its argument regarding validity of the arbitration clause itself and has therefore waived the issue.  Even if properly raised, this is not an issue for the Court to decide, because it goes to the contract as a whole.  *See Cardegna*, 546 U.S. at 445–46 ("unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."); *see also Prima Paint*, 388 U.S. at 403–04 ("if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.").

[9] Elsewhere, Oklahoma law provides: "[w]here a contract has several distinct objects, of which one at least is lawful and one at least is unlawful in whole or in part, the contract is void as to the latter, and *valid* as to the rest."  15 Okla. Stat. § 105 (emphasis added).  The use of the term "valid" in § 105, which presupposes the existence of a contract, suggests "validity" in § 28 is not intended to refer to formation, but rather a defense to enforcement of an existing contract.

of the Agreements.[10]

At bottom, Donley Construction's argument regarding identifiability of DFG is clearly an end run around a fraud challenge the arbitrator must decide.[11] *See Prima Paint*, 388 U.S. at 403–04 ("[T]he statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally."); *see also Wakeman v. Uber Techs., Inc.*, No. 23-CV-02092-TC-TJJ, 2024 WL 836985, at *3 (D. Kan. Feb. 28, 2024) (the plaintiff's argument regarding mutuality, styled as a formation issue, was actually an interpretation argument that had to be decided by the arbitrator).

Although not disputed, the Court notes the basic requirements of contract formation are met. Under Oklahoma law, it is "essential to the existence of a contract that there should be: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." 15 Okla. Stat. § 2.

First, and most importantly, there is no dispute Mr. Donley executed the Agreements on behalf of Donley Construction, including the pages containing the arbitration provisions. *See* [Doc. Nos. 19-2, 19-3] at 9-10; *see also* Resp. [Doc. No. 21] at 3-4; Am.

---

[10] Absent any cognizable challenge to the "making" of the Agreements, Donley Construction is not entitled to a jury trial. *See* 9 U.S.C. § 4 (requiring a trial "if the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue"); *see also James v. Bobrick Washroom Equip., Inc.*, No. CIV-09-145-KEW, 2010 WL 368727, at *2 n. 4 (E.D. Okla. Feb. 1, 2010) ("A jury trial at this stage is only appropriate if the making of the arbitration agreement is in issue."); *Hancock v. Am. Tel. & Tel. Co.*, 804 F. Supp. 2d 1196, 1207 n. 24 (W.D. Okla. 2011), *aff'd*, 701 F.3d 1248 (10th Cir. 2012) ("a party resisting arbitration is not entitled to a jury trial merely because he has demanded one.").

[11] Donley Construction states it is "not seeking to avoid arbitration on the grounds of fraudulent inducement, even though [it] was in fact fraudulently induced to execute the documents." *Id.* at 11 n. 3.

Compl. [Doc. No. 10] ¶ 31; Aff. [Doc. No. 21-1] ¶ 17. On the other side, although he does not directly state ASC and DFG are synonymous, Mr. Rosenthal attests that ASC entered into the Standard Merchant Cash Advance Agreements. Mot. [Doc. No. 19] at 2.[12]

Although it now attempts to challenge the relationship between ASC and DFG, Resp. [Doc. No. 21] at 9-10, Donley Construction unambiguously alleged that they are synonymous. *See* Am. Compl. [Doc. No. 10] ¶ 3. It further admits that allegation was based on its discovery that "ASC owns the account into which Plaintiff's stolen money was funneled." Resp. [Doc. No. 21] at 9 n. 1. Ultimately, Donley Construction offers no evidence to suggest ASC and DFG are not affiliated, and its effort to dispute its own allegation appears to be solely geared toward avoiding arbitration.[13]

Finally, there is no contention that the cash advance provisions of the Agreements are unlawful or lack sufficient consideration, and nothing about the Agreements themselves suggests either element is not met. *See Zyppah, Inc. v. Ace Funding Source, LLC*, No. 1:19-CV-01158 (ALC), 2019 WL 6647912, at *1 (S.D.N.Y. Nov. 6, 2019) (describing the basic nature of such agreements, where "a merchant cash advance provider gives the business a lump sum" in exchange for "a higher sum to the provider in installments, based on a percentage of the business' future sales."). Accordingly, the Agreements satisfy the

---

[12] There is also no dispute ASC is a limited liability company organized under the laws of the State of New Jersey such that it is capable of contracting. *See* Am. Compl. [Doc. No. 10] ¶ 3.

[13] Importantly, Donley Construction makes no argument regarding ASC's standing to compel arbitration, or authority of DFG to bind ASC. *See Cardegna*, 546 U.S. at 444 n.1 (indicating a challenge as to whether the signor lacked authority to commit the alleged principal is one which goes to the formation of the agreement and could likely be decided by courts).

requirements of formation under Oklahoma law, and it is for the arbitrator to decide whether they are valid.[14]

## B. Scope of the Agreements

Donley Construction next argues its claims for fraud, conspiracy to commit fraud, and civil RICO are beyond the scope of the arbitration clause, and the Agreements containing the arbitration clause were "only one tool used in furtherance of that fraud." Resp. [Doc. No. 21] at 12-13. As noted above, however, Donley Construction wholly fails to address the delegation provision the ASC Defendants invoke. *See* Mot. [Doc. No. 20] at 6; *see also* Resp. [Doc. No. 21] at 12-13.

That provision is dispositive here: when "parties clearly and unmistakably agree[] to arbitrate arbitrability, all questions of arbitrability—including the question of whether claims fall within the scope of the agreement to arbitrate—ha[ve] to be resolved by an arbitrator." *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281, 1284 (10th Cir. 2017); *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–72 (2010) (provisions delegating arbitrability disputes to the arbitrator must be enforced unless specifically challenged); *Fedor*, 976 F.3d at 1106 ("issues such as the 'scope' and 'enforceability' of an arbitration clause can be committed to an arbitrator through a '[delegation] provision. . .'").

As noted, the Agreements provide: "[a]ny action or dispute relating to this

---

[14] Finally, the Court notes the result would have been the same under New York law, because the basic requirements for formation of a contract are essentially the same, and none are at issue here. *IEI Inc. v. ETG Cap. LLC*, No. 19-CV-05049 (ALC), 2023 WL 6386064, at *2 (S.D.N.Y. Sept. 29, 2023) ("To establish the existence of an enforceable agreement [under New York law], a party must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound[.]" (quoting *Kowalchuk v. Stroup*, 61 A.D.3d 118, 121 (2009)).

11

Agreement or involving DFG on one side and any Merchant or any Guarantor on the other, *including, but not limited to issues of arbitrability*, will . . . be determined by arbitration[.]" [Doc. Nos. 19-2, 19-3] at 9 (emphasis added).  This plain, unambiguous language of the arbitration clauses within the Agreements—signed by Donley Construction on that very page—provides "clear and unmistakable evidence" that the parties have delegated the issue of arbitrability to the arbitrator.  *See Brayman v. KeyPoint Gov't Sols., Inc*., 83 F.4th 823, 832 (10th Cir. 2023).  Accordingly, the Court "possesses no power to decide the arbitrability issue" regarding the scope of the arbitration agreements.  *Id*.

### C. Claims Against Mr. Rosenthal

The parties devote little attention to what should be done about Mr. Rosenthal.  In their Motion, the ASC Defendants generically ask the Court to stay the case as to Mr. Rosenthal and to compel arbitration of the claims against him.  Mot. [Doc. No. 20] at 1. Donley Construction briefly asserts Mr. Rosenthal is not a party to the Agreements, and it did not agree to arbitrate any claims against him, therefore its claims against him should proceed in this Court.  Resp. [Doc. No. 21] at 13-14.  Although the Court agrees Mr. Rosenthal is not a party to the Agreements, it finds the best course of action is to stay this case, including the claims against Mr. Rosenthal.

The Court has discretion to stay litigation involving a non-party to an arbitration agreement while arbitration proceeds as to other parties.  *See Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1518 (10th Cir. 1995).  The mere fact that piecemeal litigation may result from the combination of arbitrable and nonarbitrable issues is not reason enough to stay an entire case.  *Riley Mfg. Co. v. Anchor Glass Container Corp*., 157 F.3d 775, 785

(10th Cir. 1998). However, "[s]tay of the entire proceeding is appropriate when resolution of the arbitrable claim will have a preclusive effect on the nonarbitrable claim or when 'the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit.'" *Chelsea Fam. Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1200 (10th Cir. 2009) (quoting *Riley Mfg.*, 157 F.3d at 785). The decision to stay proceedings should be "based upon considerations of judicial efficiency." *Coors Brewing Co.*, 51 F.3d at 1518.

Donley Construction asserts claims for fraud, conspiracy to commit fraud, and civil RICO against the "Defendants" collectively—nowhere in any of these claims does it distinguish claims asserted against (or actions taken by) Mr. Rosenthal individually. *See* Am. Compl. [Doc. No. 10] ¶¶ 62-91. As such, "[i]t is difficult to imagine that arbitration of the claims against [ASC Group] would not have some preclusive effect on the claims against [Mr. Rosenthal] since they are based in the same facts and allegations." *Belnap v. IASIS Healthcare Corp.*, No. 2:14-CV-00086-DN, 2017 WL 4351472, at *3 (D. Utah Sept. 29, 2017) (pointing to the plaintiff's "use of the collective term 'Defendants'"); *see also Aspen Mountain Residence Condo Ass'n, Inc. v. Weisman*, No. 22-CV-01457-NYW, 2022 WL 4104271, at *3 (D. Colo. Sept. 8, 2022) (finding a stay appropriate where "the parallel proceedings are based largely on the same facts and allegations" like in *Belnap*).[15]

The Court also finds a stay best serves the interest of judicial efficiency. As

---

[15] Moreover, Donley Construction's factual allegations primarily consist of actions taken by representatives of "DFG", "aka ASC Group," *see* Am. Compl. [Doc. No. 10] ¶¶ 3, 27-61, which suggests "the arbitrable claims predominate the lawsuit." *See Chelsea Fam. Pharmacy, PLLC*, 567 F.3d at 1200.

13

explained in *Belnap*:

> [T]o have two adjudicative bodies simultaneously address claims involving the same facts and allegations is a significant waste of resources and creates the risk that the arbitration and the litigation might produce inconsistent results. Although significant time has passed in the case already, the case is not well developed. At this point it would not be prejudicial to [the plaintiff] to have an arbitrator address his claims against [one defendant] first. Arguably, he stands to benefit from the process because the resolution of those claims in arbitration would likely aid in streamlining the remaining litigation of the overlapping claims.

2017 WL 4351472 at *3; *see also Weisman*, 2022 WL 4104271 at *4 (also finding a stay appropriate because it "avoid[s] any issues of incongruent discovery between the two actions" and the plaintiff did not argue it would be prejudiced by a stay). For all these reasons, the Court finds this action should be stayed as to Mr. Rosenthal.[16]

### D. <u>Venue</u>

When an arbitration agreement includes a forum selection clause, only a federal district court within the specified forum may issue an order compelling arbitration. *Ansari v. Qwest Communications Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005); 9 U.S.C. § 4. However, this issue relates to the district court's venue, not its subject matter jurisdiction, and a party may waive its statutory right to litigate arbitration issues within the forum specified in the parties' arbitration agreement by failing to raise this issue. *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1052-55 (10th Cir. 2006) (affirming decision by federal district court in Colorado compelling arbitration in Ohio).

---

[16] Plaintiff also asserted this action should not be stayed as to the "John Doe" Defendants it named in the Amended Complaint. *See* Resp. [Doc. No. 21] at 14. But those Defendants have been dismissed for failure to effect service of process, *see* Order [Doc. No. 26], so this issue is moot.

Here, the Agreements provide that arbitration "must be conducted" in New York, "in the Counties of Nassau, Queens, or Kings." [Doc. Nos. 19-2, 19-3] at 9. No party moved to transfer venue or otherwise raised any issue regarding authority of this Court to compel arbitration in New York. Accordingly, that issue has been waived, and the Court may compel arbitration as specified in the Agreements. *See 1mage Software, Inc.*, 459 F.3d at 1052-55; *see also Levine v. Vitamin Cottage Nat. Food Markets, Inc.*, No. 20-CV-00261-STV, 2021 WL 4439800, at *23 (D. Colo. Sept. 27, 2021) ("The parties have not raised venue before this Court, thus the issue is waived."); *Torgerson v. LCC Int'l, Inc.*, No. 16-CV-2495-DDC-TJJ, 2016 WL 4208103, at *3 (D. Kan. Aug. 10, 2016) (absent any objection to venue, the arbitration "provision's selection of Virginia as the place for arbitration does not preclude the court from compelling arbitration there").

### IV.   Conclusion

IT IS THEREFORE ORDERED as follows:

1.   The ASC Defendants' Motion to Stay Action and Compel Arbitration [Doc. No. 18] is GRANTED as set forth above. Donley Construction's claims against ASC Group, LLC shall proceed to arbitration.

2.   This matter is STAYED pending completion of the arbitration proceedings.

3.   The Clerk of Court is directed to administratively terminate this matter until further order of the Court. The termination is without prejudice to the rights of the parties to reopen the case after completion of the arbitration proceeding for the entry of any stipulation or order, or for any other purpose required to obtain a final determination of the litigation.

4. The parties shall notify the Court upon completion of the arbitration proceeding by filing a written notice. If, within 30 days after completion of the arbitration proceeding, the parties have not moved to reopen the case for the purpose of obtaining a final determination of the litigation, this action will be deemed to be dismissed with prejudice.

IT IS SO ORDERED this 14th day of August, 2024.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE