**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| Dustin Donley Construction Services, LLC, | ) ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | Case No. CIV-22-1010-SLP |
| 1. Joseph Aaron Rosenthal, | ) | |
| 2.ASC Group, LLC aka Delta Fund Grp aka DFG, | ) ) | |
| 3. Mathew Robertson, | ) | |
| 4. Nicholas Smith, | ) | |
| 5. James Missry, | ) | |
| 6. Paul Cotogno, | ) | |
| 7. Blaise Cotogno, | ) | |
| 8. Adam Akel, and | ) | |
| 9. Nicholas Winter, | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT PAUL
COTOGNO'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS…….………………………………………………………………i

TABLE OF AUTHORITIES…………………………………………………………..iii

INTRODUCTION………………………………………………………………...1

ARGUMENTS AND AUTHORITY……………………………………………...2

    I.    BECAUSE THIS COURT HAS PERSONAL JURISDICTION OVER AT LEAST ONE DEFENDANT, THE COURT HAS JURISDICTION OVER THE REMAINING DEFENDANTS AS REQUIRED BY THE ENDS OF JUSTICE………………………………………..……...……………....2

        A.  The Court Has Personal Jurisdiction Over Defendants Rosenthal and ASC...….2

        B.  This Court Has Personal Jurisdiction Over Defendant Robertson………...…....6

    II.   THE ENDS OF JUSTICE REQUIRE THE EXERCISE OF PERSONAL JURISDICTION OVER THE REMAINING DEFENDANTS……………………………………………..…………..7

    III.  DEFENDANT COTOGNO HAS NOT SHOWN THAT EXERCISING PERSONAL JURISDICTION OVER HIM VIOLATES THE FIFTH AMENDMENT…………………………………………….............14

        A. Defendant Cotogno Has Not Met His Heavy Burden of Showing That This is One of Those Highly Unusual Cases Where Inconvenience Rises to the Level of a Constitutional Concern…………………………………………………...…14

            1.  Extent of Contact With the Forum State…………………………………...16

            2.  Inconvenience of Having to Litigate in a Foreign Jurisdiction……………17

            3.  Judicial Economy………………………………………………………….17

            4.  The Probably Situs of Discovery Proceedings……………………………18

            5.  The Nature of the Defendant's Activities and Its Impact Beyond His State's Borders……………………………………………………………………18

B. Even if Defendant Cotogno Had Shown This to Be a Highly Unusual Case Where His Inconvenience Rises to the Level of a Constitutional Concern, Any Infringement on Defendant Cotogno's Liberty is Justified by Governmental Interests…………………………………………………………………….18

**CONCLUSION**…………………………………………………………………....20

# TABLE OF AUTHORITIES

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).......................................5, 6, 7, 14

*Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.,*
788 F.2d 535 (9th Cir.1986).................................................................................8

*Cory v. Aztec Steel Bldg., Inc.,*
468 F.3d 1226 (10th Cir. 2006)......................................................................1, 8, 9, 14, 19

*ESPOT, Inc. v. MyVue Media, LLC,*
492 F. Supp. 3d 672 (E.D. Tex. 2020)........................................................................10, 11

*Fed. Deposit Ins. Corp. v. Oaklawn Apartments,*
959 F.2d 170 (10th Cir. 1992)..................................................................................3

*HCA Health Servs. of Florida, Inc. v. Hillman,*
906 So. 2d 1094 (Fla. Dist. Ct. App. 2004)........................................................................10

*JMF Med., LLC v. Team Health, LLC,*
490 F. Supp. 3d 947 (M.D. La. 2020)…………………………………………...................10, 17

*Klein v. Cornelius,*
786 F.3d 1310 (10th Cir. 2015).................................................................................16

*Old Republic Ins. Co. v. Cont'l Motors, Inc.,*
877 F.3d 895 (10th Cir. 2017)................................................................. 2, 12

*Peay v. BellSouth Med. Assistance Plan,*
205 F.3d 1206 (10th Cir. 2000)..................................................................14, 15, 17, 18 19

*Republic of Panama v. BCCI Holdings,*
119 F.3d 935 (11th Cir. 1997).................................................................................15, 16

Rolls-Royce Corp. v. Heros, Inc.,
576 F. Supp. 2d 765 (N.D. Tex. 2008)..........................................................................8

*Standard Oil Co. of N.J. v. United States,*
221 U.S. 1, 31 S.Ct. 502, 55 L.E.d 619 (1911)..................................................................8

COMES NOW the Plaintiff, Dustin Donley Construction Services, LLC (**"Donley"**) and states the following for its response to Defendant Paul Cotogno's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 44][1]:

### INTRODUCTION

Defendant Cotogno asks the Court to dismiss the claims against him on the grounds that Defendant Cotogno does not have the requisite minimum contacts with the state of Oklahoma. To make this argument, Defendant Cotogno cites cases generally discussing personal jurisdiction in run of the mill civil cases. However, Defendant Cotogno ignores the fact that this is a civil RICO case.

In civil RICO cases, Congress statutorily authorized nationwide service of process, and such service establishes personal jurisdiction. *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229 (10th Cir. 2006). In the 10th Circuit, if a district court has personal jurisdiction over one defendant in a civil RICO case, then the court can exercise personal jurisdiction over all defendants as necessary to satisfy the ends of justice. *Id.* at 1231. In this case, this Court certainly has personal jurisdiction over at least one defendant, and Plaintiff will show that this Court's exercise of personal jurisdiction over the other defendants is required by the ends of justice.

As Plaintiff explains below how this Court has personal jurisdiction over at least one defendant and why the ends of justice require this Court to exercise jurisdiction over the remaining defendants, it is important to remember that Plaintiff "need only make a

---

[1] Plaintiff has filed a motion to strike Defendant Cotogno's motion to dismiss [Doc. No. 51]. Plaintiff files this response out of an abundance of caution in the even the Court does not strike the motion.

prima facie showing of personal jurisdiction" to defeat a motion to dismiss. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). In addition, for purposes of evaluating a motion to dismiss for lack of personal jurisdiction, factual disputes must be resolved in favor of the Plaintiff in determining whether Plaintiff has made a prima facie showing. *Id*.

**ARGUMENTS AND AUTHORITY**

I.  **BECAUSE THIS COURT HAS PERSONAL JURISDICTION OVER AT LEAST ONE DEFENDANT, THE COURT HAS JURISDICTION OVER THE REMAINING DEFENDANTS AS REQUIRED BY THE ENDS OF JUSTICE.**

The 10th Circuit extensively examined personal jurisdiction in civil RICO cases and determined that "where jurisdiction can be established over at least one defendant, summons can be served nationwide on other defendants if required by the ends of justice." *Id.* at 1231. Here, this Court clearly has personal jurisdiction over at least one defendant.

A.  **The Court Has Personal Jurisdiction Over Defendants Rosenthal and ASC.**

This Court clearly has personal jurisdiction over Joseph Aaron Rosenthal (**"Rosenthal"**) and ASC Group, LLC (**"ASC"**). Both Rosenthal and ASC filed a motion to compel arbitration [Doc. Nos. 18-20] without asserting the defense of lack of personal jurisdiction. This is not surprising, because, as described below, Rosenthal and ASC both have the requisite contacts with Oklahoma for this Court to exercise personal jurisdiction over them.

Because Rosenthal and ASC failed to raise lack of personal jurisdiction as a defense in their pre-answer motion to compel arbitration, they have waived the defense of lack of personal jurisdiction. "Objections to personal jurisdiction and service of process must be

2

asserted in the answer or in a pre-answer motion." *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 175 (10th Cir. 1992). "If a party files a pre-answer motion and fails to assert the defenses of lack of personal jurisdiction or insufficiency of service, he waives these defenses." *Id*. Because both Rosenthal and ASC filed a pre-answer motion and failed to assert the defense of lack of personal jurisdiction, both Rosenthal and ASC waived any defense of lack of personal jurisdiction and instead submitted to this Court's jurisdiction. Accordingly, this Court unquestionably has personal jurisdiction over ASC and Rosenthal, and, as a result, this Court has personal jurisdiction over the remaining defendants as required by the ends of justice.

In addition, even absent such a waiver, this Court has specific personal jurisdiction over Rosenthal and ASC based on their substantial contacts with the state of Oklahoma. ASC is identified in the caption and in paragraph 3 of the Second Amended Complaint as doing business as Delta Fund Grp and DFG. The Second Amended Complaint then goes into significant detail describing contracts that DFG entered into in Oklahoma, describing DFG transferring money into Oklahoma, and describing DFG withdrawing money from Oklahoma, all in furtherance of Defendants' fraudulent scheme. [Doc. No. 33 at ¶¶ 32-52, 57]; Exhibit "1", Donley Affidavit. Importantly, in Rosenthal's affidavit filed in support of his and ASC's motion to compel arbitration, Rosenthal confirms that ASC did in fact enter into the contracts with Plaintiff as described in the Second Amended Complaint. [Doc. No. 19 at ¶¶ 5-6, 8-9].

With regard to Rosenthal, Plaintiff alleges that Rosenthal is the sole member of ASC and an officer of ASC. [Doc. No. 33 at ¶¶ 61-62]; Exhibit "1", Donley Affidavit. Plaintiff

3

further alleges that Rosenthal is the person who opened the ASC bank account in Florida. [Doc. No. 33 at ¶ 61]; Exhibit "1", Donley Affidavit. Finally, Plaintiff alleges that, on multiple occasions, Defendants caused sums of money to be transferred from Plaintiff's Oklahoma bank account to the Florida bank account. [Doc. No. 33 at ¶¶ 37-44, 52, 57-58]; Exhibit "1", Donley Affidavit.  Rosenthal confirms in his affidavit that one of his duties with ASC is to maintain ASC's business records and that he works with ASC's business records "on a daily basis". Based on the facts alleged by Plaintiff and the facts admitted by Rosenthal, it is clear that Rosenthal, as ASC's only member and officer, had to have known and approved of (and presumably directed) the actions of ASC in Oklahoma.

Plaintiff's allegations are bolstered by the affidavit of FBI Special Agent Anthony Czajkowski (**"Czajkowski Affidavit"**).[2] Victim-1 in the Affidavit is Plaintiff. [Doc. No. 33 at ¶70-71]; Exhibit "1", Donley Affiavit. The Czajkowski Affidavit confirms that Rosenthal opened the ASC account in Florida, and that the ASC account was used to transfer money to and from Oklahoma in furtherance of the fraud. [Doc. No. 44-2 at ¶ 13-15]. Importantly, the Czajkowski Affidavit also confirms that Rosenthal created the internet domain and email address (jerry@oakcapitalgrp.com) for a fraudulent entity called Oak Capital Grp. [Doc. No. 44-2 at ¶ 12]. Plaintiff's Second Amended Complaint describes one or more persons acting on behalf of Oak Capital making multiple calls to Plaintiff in Oklahoma, sending multiple text messages to Plaintiff in Oklahoma, and emailing Plaintiff

---

[2] The Second Amended Complaint indicates the Affidavit is attached as Exhibit "1" and incorporates the allegations of the Affidavit into the Second Amended Complaint. [Doc. No. 33 at ¶ 67]. Plaintiff's counsel, in responding to this motion, discovered that the Affidavit was inadvertently not filed as an exhibit. However, Defendant Cotogno did include the Affidavit as an exhibit to his motion to dismiss.

in Oklahoma. [Doc. No. 33 at 18-55]; Exhibit "1", Donley Affidavit. In fact, the contracts that Rosenthal acknowledges ASC entered into with Plaintiff in Oklahoma were sent from jerry@oakcapitalgrp.com. *See* Exhibit "2", Email from jerry@oakcapitalgrp.com to Plaintiff in Oklahoma transmitting terms of a proposed line of credit and attaching a contract.

In summary, Rosenthal formed ASC, is the sole member of ASC, opened the ASC account in Florida, and manages the daily business of ASC. ASC contracted with Plaintiff in Oklahoma, deposited money into Plaintiff's bank account in Oklahoma, and withdrew money from Plaintiff's bank account in Oklahoma. Clearly, Rosenthal, as the creator, sole member, and daily manager of ASC, directed these activities. In addition, Rosenthal created the oakcapitalgrp domain for a fraudulent entity called "Oak Capital", the ASC contracts were sent to Plaintiff in Oklahoma with the an email from jerry@oakcapitalgrp.com, and, as discussed in Part I(B) below, persons purporting to act on behalf of Oak Capital made numerous calls and texts to Oklahoma in furtherance of Defendants' fraudulent scheme.

Specific personal jurisdiction is proper "where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S. Ct. 2174, 2184, 85 L. Ed. 2d 528 (1985). "Thus where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of

5

the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 475. In some cases, other factors, which are outlined in *Burger King*, even "serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.* at 477.

In this case, Rosenthal and ASC waived the defense of lack of personal jurisdiction and have submitted to the jurisdiction of this Court. However, even if that were not the case, both Rosenthal and ASC deliberately created a substantial connection with Oklahoma, and the exercise of personal jurisdiction over them comports with fair play and substantial justice. Therefore, this Court has personal jurisdiction over at least one defendant, as required to exercise jurisdiction over the remaining defendants in a civil RICO case when required by the ends of justice.

B. **This Court has Personal Jurisdiction Over Defendant Robertson.**

Plaintiff's Second Amended Complaint describes numerous telephone and text communications to Plaintiff in Oklahoma from a telephone number having a Miami-Dade, Florida prefix by a man claiming to be named "Jerry Thomas" and claiming to be associated with Oak Capital. [Doc. No. 33 at ¶¶ 17-55]; Exhibit "1", Donley Affidavit. Plaintiff has learned in the process of obtaining service of the recently named defendants that Defendant Robertson is domiciled in Miami, Florida. *See* Exhibit "3", Verified Return of Non-Service[3]; Exhibit "4" April 21, 2025 filing with the Florida Department of State

---

[3] Defendant Robertson evaded service via process server. As a result, Plaintiff is actively attempting service on Defendant Robertson via other means.

6

(showing Defendant Robertson at the address attempted by the process server as shown in Exhibit "3").

The Czajkowski Affidavit attests to approximately 220 telephone communications between "Thomas" and Plaintiff. [Doc. No. 44-2 at ¶ 16]. The Czajkowski Affidavit attests that the number used to communicate with Plaintiff was a VoIP number set up with a cellular telephone registered to Defendant Robertson and an email address that includes Defendant Robertson's first name, middle initial, and last name. [Doc. No. 44-2 at ¶ 16].

It is now clear that Defendant Robertson is the person who claimed to be Jerry Thomas. Therefore, Defendant Robertson systematically and repeatedly, over a period of several weeks, deliberately engaged in significant conduct with Plaintiff in Oklahoma via (1) hundreds of telephone communications and (2) by emailing to Oklahoma proposed terms of a supposed line of credit, and by (3) emailing to Oklahoma the contracts with ASC. Hundreds of telephone communications along with emails transmitting contracts does not constitute "random, fortuitous, or attenuated contacts", and the contacts were certainly not the result of "unilateral activity of another third party or a third person", which would prevent the exercise of personal jurisdiction. *Burger King Corp.*, 471 U.S. at 475 (internal citations omitted). Instead, such communications constitute the type of "actions by the defendant *himself* that create a substantial connection with the forum state." *Id.* Therefore, this Court has personal jurisdiction over Defendant Robertson.

## II. <u>THE ENDS OF JUSTICE REQUIRE THE EXERCISE OF PERSONAL JURISDICTION OVER THE REMAINING DEFENDANTS.</u>

Because this Court has jurisdiction over at least one defendant, "summonses can be

served nationwide on other defendants if required by the ends of justice." *Cory*, 468 F.3d at 1231. At least one federal circuit has taken this to mean that if a federal district exists that has traditional personal jurisdiction over all defendants, then the plaintiff cannot establish that the ends of justice requires jurisdiction to be exercised elsewhere. *See e.g. Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986). The Tenth Circuit has expressly rejected this test, and the Tenth Circuit's reasoning in this regard is important.

After examining the legislative history of RICO and examining other legislation on which RICO was modeled, the Tenth Circuit determined that RICO must be "liberally construe[d] to effectuate is remedial purposes." *Cory*, 468 F.3d at 1231-32. The Tenth Circuit examined other statutes that rely on an "ends of justice" test and pointed out that the Supreme Court has "rejected the notion that a confluence of defendants within a single judicial district controls the 'ends of justice' analysis." *Id.* at 1232 (citing *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 46, 31 S.Ct. 502, 55 L.E.d 619 (1911)). In fact, the Tenth Circuit noted that *Standard Oil* even rejected "the nonresident defendants' argument that 'the ends of justice' would be better served if they were summoned into court 'in the district of the inhabitancy of a larger number of the defendants'". *Cory*, 468 F.3d at 1232. In other words, the Tenth Circuit holds to a more expansive application of the "ends of justice" test. Rolls-Royce Corp. v. Heros, Inc., 576 F. Supp. 2d 765, 782 (N.D. Tex. 2008)(finding ends of justice required exercise of jurisdiction after adopting the Tenth Circuit's analysis over and against "Ninth Circuit's restrictive interpretation").

The Tenth Circuit did not go on to define an ends of justice analysis. Instead, it

8

explained that "the 'ends of justice' is a flexible concept uniquely tailored to the facts of each case." *Cory*, 468 F.3d at 1232. In *Cory*, the court found that the plaintiff had not established that the ends of justice required the exercise of jurisdiction over all defendants, because the plaintiff's only argument was that he sustained damages and litigation costs in the forum statute. *Cory*, 468 F.3d at 1232. It is not surprising that the *Cory* plaintiff's argument was insufficient, because every plaintiff would have the same argument if suit is brought in the plaintiff's home forum where the plaintiff suffered damages. Clearly more is required to meet even the Tenth Circuit's (and Supreme Court's) broad view of an ends of justice analysis.

In this case, several factors weigh in favor of the Court determining that the ends of justice requires the exercise of personal jurisdiction over all defendants. Plaintiff has established that this Court has traditional personal jurisdiction over three of the nine plaintiffs. Plaintiff has, at this Court's direction, proceeded to arbitrate its claims against two of those defendants, Rosenthal and ASC. Plaintiff prevailed in the arbitration and has filed a motion to confirm the arbitration award. [Doc. No. 40]. Rosenthal and ASC failed to respond to Plaintiff's motion within the required time. In addition, as shown above, Plaintiff has learned that Defendant Robertson is a citizen of Florida. The remaining defendants appear to be citizens of New Jersey.

So, Plaintiff anticipates judgment on its arbitration award in this district. If Plaintiff were to be required to pursue a claim against Defendant Robertson in his home district, Plaintiff would be required to file suit in the Southern District of Florida. Then, if Plaintiff were required to pursue claims against the remaining defendants in their home districts,

9

Plaintiff would be required to file suit in the District of New Jersey. In other words, Plaintiff would likely be required to pursue claims against different defendants in at least three different states - one in the center of the country, one in the southeast corner of the country, and one in the northeast corner of the country.

Causing Plaintiff to litigate in these multiple states could result in different courts applying different circuit precedent to Plaintiff's RICO claims and different state law to Plaintiff's ancillary state law claims. Multiple suits against different defendants arising from the same facts could also create concerns with the legal prohibition on splitting causes of action. Depending on when the Court rules on motions to dismiss, statute of limitations could be a bar to refiling in other forums. For example, "unlike the majority of states, Florida has chosen not to adopt a 'savings statute' that allows a plaintiff whose case has been dismissed otherwise than on the merits to pursue the action even though the statute of limitations has run." *HCA Health Servs. of Florida, Inc. v. Hillman*, 906 So. 2d 1094, 1098 (Fla. Dist. Ct. App. 2004). There would be nothing just in this *innocent* Plaintiff facing such obstacles. In addition, a multiplicity of lawsuits would certainly not further judicial economy. "Neither justice, nor judicial economy would be served by forcing Plaintiff[] to fracture [its] claims across multiple forums to reach the various Defendants." *JMF Med., LLC v. Team Health, LLC*, 490 F. Supp. 3d 947, 970 (M.D. La. 2020)(finding the ends of justice required the exercise of jurisdiction over all defendants in civil RICO action). *See also ESPOT, Inc. v. MyVue Media, LLC*, 492 F. Supp. 3d 672, 687 (E.D. Tex. 2020)(finding ends of justice required exercise of jurisdiction in civil RICO action when no other forum would clearly have personal jurisdiction over all defendants).

10

Forcing Plaintiff to pursue its claims in multiple forums is even more unjust where Defendants concealed their citizenship to begin with by concealing their identities. The Second Amended Complaint and the Czajkowski Affidavit explain how Defendants used a host of fake names, fake companies, and other ruses in order to conceal Defendants' true identities. When originally filing suit, Plaintiff could not identify a single defendant, let alone identify what other forums might have traditional personal jurisdiction over which defendants. What Plaintiff did know was that at least one person had communicated with Plaintiff in Oklahoma hundreds of times, someone had sent emails and contracts to Oklahoma, someone had caused money to be deposited into Plaintiff's account in Oklahoma, and someone had caused money to be withdrawn from Plaintiff's account in Oklahoma. In other words, Plaintiff knew that someone had wronged him by their conduct in Oklahoma.

Therefore, Plaintiff filed suit in Oklahoma. Over the past three years of this lawsuit Plaintiff has conducted third party discovery, Plaintiff has resisted and lost against a motion to compel arbitration, Plaintiff has complied with this Court's order compelling arbitration, Plaintiff has filed two amended complaints, and Plaintiff has filed a motion to confirm arbitration award. Allowing Defendants to now control the forums in which Plaintiff must litigate would reward the wrongdoers and harm the victim of a massive fraudulent interstate scheme – particularly where Plaintiff's choice of forum was limited by Defendants' own obfuscations. There is nothing fair about giving such control to these defendants in the face

11

of an innocent Plaintiff.[4]

It is important to remember that, where facts are in dispute, such disputes must be resolved in Plaintiff's favor for purposes of Defendant Cotogno's motion. *Old Republic Ins. Co.*, 877 F.3d at 903. Importantly, unlike Defendant Missry, Defendant Cotogno does not deny in his affidavit that he participated in the nationwide conspiracy, that he received proceeds from the fraudulent scheme, or that he is affiliated with ACS Group. [Compare Doc. No. 41-1 with Doc. No. 44-1]. However, like Defendant Missry, Defendant Cotogno does attach the Czajkowski Affidavit to his motion. [Doc. No. 44-2]. Special Agent Czajkowsky attests that his affidavit is based on his own investigation, conversations with other law enforcement officers, interviews of victims, review of reports, review of documents, and review of other items of evidence. [Doc. No. 44-2 at introduction in Attachment B]. Based on a year-long investigation, Special Agent Cjajkowsky attests that Defendant Cotogno was a part of the fraudulent scheme that was perpetrated out of New York and elsewhere against thousands of victims, including Plaintiff, who is Victim-1 in the Czajkowski Affidavit. [Doc. No. 44-2 at ¶ 1-2, 6-11]. The Czajkowski Affidavit further specifically alleges that proceeds of the fraud were split among the Defendants (including Defendant Cotogno) and spent on personal items. [Doc. No. 44-2 at ¶ 10]. Therefore, Defendant Cotogno has submitted evidence (the Czajkowski Affidavit) to the Court that

---

[4] *See e.g. Espot, Inc.*, 492 F.Supp.3d at 686-7 (refusing to allow civil RICO defendants to control the forum by agreeing to waive objections to personal objection in another forum):

> Allowing a promised waiver to defeat personal jurisdiction under these circumstances would effectively grant defendants the authority to veto a court's otherwise valid jurisdiction. It would also effectively give defendants under similar circumstances the power to select the forum. For example, defendants could simply promise to waive personal jurisdiction in a forum with more favorable law.

*Id.*

12

he was involved in the fraud perpetrated by Defendants, and he has offered no evidence to the contrary.

In his motion, Defendant Cotogno points out that he has not been convicted of a crime and that the Czajkowski Affidavit only contains allegations. It is true that the Second Amended Complaint contains allegations, as is true for all lawsuits. It also true that the Czajkowski Affidavit contains allegations, albeit allegations sworn under oath by a federal law enforcement officer. If allegations could not inform an ends of justice analysis, then an ends of justice analysis would be essentially meaningless. All lawsuits and all criminal charges are allegations until they are not. Plaintiffs should not be required to prove the substance of a case in order for the ends of justice to require the exercise of personal jurisdiction – particularly where a group of defendants have conspired to conceal evidence and facts that can only be obtained and proven through discovery. That is precisely why competing factual allegations must be resolved in a plaintiff's favor on a motion to dismiss for lack of personal jurisdiction.

When the substantive facts concerning Defendants Cotogno's conduct are resolved in favor of Plaintiff, the scales tip *even further* in favor of the ends of justice requiring the exercise of personal jurisdiction over Defendant Cotogno. Plaintiff did nothing wrong in this case. Defendant Cotogno, on the other hand, participated in a complex interstate scheme where over 1,000 victims were defrauded out of millions of dollars. [Doc. No. 44-2]. This is not a case where a creative plaintiff's lawyer transformed a run of the mill fraud case into a civil RICO case by finding a few predicate acts. This is a case where Plaintiff is a victim of true organized crime. The scales of justice, and thus the ends of justice, should

tip in Plaintiff's favor under these circumstances.

This is especially true in light of the purpose of RICO. "RICO was intended to eradicate organized crime." *Cory*, 468 F.3d at 1232. An ends of justice analysis must comport "with the congressional directive to liberally construe RICO to effectuate its remedial purposes." *Id.* That is why the ends of justice "is a flexible concept uniquely tailored to the facts of each case." *Cory*, 468 F.3d at 1232. The test must be flexible in order to accomplish the goal of liberally construing RICO to effectuate its purpose of eradicating organized crime. Therefore, under the totality of the circumstances of this case, Plaintiff has made a prima facie showing that the ends of justice require the exercise of personal jurisdiction over all defendants in order to effectuate the remedial purpose of RICO.

**III. DEFENDANT COTOGNO HAS NOT SHOWN THAT EXERCISING PERSONAL JURISDICTION OVER HIM VIOLATES THE FIFTH AMENDMENT.**

**A. Defendant Cotogno Has Not Met His Heavy Burden of Showing That This is One of Those Highly Unusual Cases Where Inconvenience Rises to the Level of a Constitutional Concern.**

Where a plaintiff has made a prima facie case for personal jurisdiction based on a statute authorizing nationwide service of process, the burden shifts to the defendant to show that his Fifth Amendment right to due process will be violated by the exercise of such jurisdiction. *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000). The burden is on the defendant to show that the exercise of jurisdiction in the chosen forum will "make litigation so gravely difficult and inconvenient that he unfairly is at a severe disadvantage in comparison to his opponent." *Peay v. BellSouth Med. Assistance Plan*, 205

14

F.3d 1206, 1212 (10th Cir. 2000)(quoting *Burger King Corp.*, 471 U.S. at 478, 105 S.Ct. 2174). "[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *Id.*(quoting *Republic of Panama v. BCCI Holdings*, 119 F.3d 935, 947 (11th Cir. 1997)).

*Republic of Panama* was decided by the 11th Circuit in 1997 and quoted with approval by the 10th Circuit in *Peay* in 2000. Both opinions discuss the fact that technology at that time had lessened the burden of litigating in distant forums. Technology has marched briskly forward since those years. ECF filing was not available in this or most federal districts in 2000. Communication has become more swift and easy with the advent of iPhones and other smartphones in the 2000s. Electronic discovery has proliferated. Various video conferencing platforms are used daily by lawyers to meet with clients thousands of miles away. Lawyers and clients are sometimes never in the same state until a deposition or trial, and occasionally even those take place via some type of remote video conferencing system. In other words, if it was highly unusual for distance to rise to the level of a constitutional concern in 1997 and 2000, then it should be significantly more unusual in 2025.

With that in mind, the 10th Circuit has identified a few factors to consider in determining whether a defendant has met his burden of defeating personal jurisdiction in the context of a statute allowing nationwide service of process. Those list of "non-exclusive factors" include "(1) the extent of contact with the forum state, (2) the inconvenience of having to litigate in a foreign jurisdiction, (3) judicial economy, (4) the probable situs of the discovery proceedings, and (5) the nature of the defendant's activities and its impact

beyond his state's borders." *Klein v. Cornelius*, 786 F.3d 1310, 1318 (10th Cir. 2015). Taking those in turn:

    1.    <u>Extent of Contact With the Forum State.</u>

Special Agent Czajkowski attests that all Defendants victimized persons throughout the country, including Plaintiff, by engaging in a complex conspiracy. That conspiracy involved hundreds of communications with Oklahoma, numerous financial transactions in Oklahoma, and contracts entered into by emails sent to Oklahoma. As pointed out earlier, unlike Defendant Missry, Defendant Cotogno's does not deny in his affidavit that he was involved in the fraudulent scheme, that he received proceeds from the fraudulent scheme, or that he is affiliated with ASC Group.

Exactly which levers which Defendants pulled in the process of the fraud has been concealed from Plaintiff by Defendants' obfuscatory conduct[5]. Moreover, a lack of specific contacts with the forum state is only one factor and, that, standing alone is not sufficient for a defendant to defeat jurisdiction based on a statute authorizing nationwide service of process:

> Cornelius maintains he has no other contacts with Utah and thus the court has no personal jurisdiction over him. But like in the district court, Cornelius provides no argument going to the other factors, and the insignificance of contact is only one consideration.

*Klein*, 786 F.3d at 1318-19; *See also Republic of Panama*, 119 F.3d at 946 ("a defendant's

---

[5] For example, Plaintiff alleges that more than one Defendant communicated with and lied to Platiniff by phone. Thomas, who Special Agent Czajkowski alleges is Defendant Robertson, introduced Plaintiff to a person identified as Jeff Greene, and Jeff Greene was heavily involved in the fraud [Doc. No. 33 at ¶¶ 20, 25, 28-31]. There is no Jeff Greene named as a defendant, because that is a fake name. Which of the Defendants is Jeff Greene? At present, only the Defendants know. Should they be able to use their own fraud to avoid the objectives of RICO nationwide service of process?

contacts with the forum state play no magical role in the Fifth Amendment analysis"). Requiring significant specific contacts with the forum state would obviate the intended effect of all nationwide service of process statutes.

2.    Inconvenience of Having to Litigate in a Foreign Jurisdiction.

This factor includes an assessment of "(a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought". *Peay*, 205 F.3d at 1212. With regard to the nature and extent and interstate character of the business at issue, Defendant Cotogno and the other Defendants "targeted victims across the United States" and "defrauded over 1,000 victims out of millions of dollars." [Doc. No. 44-2 at ¶¶ 1, 5]. Defendant Cotogno clearly has access to counsel in Oklahoma, because he is currently represented by reputable and able counsel in Oklahoma. While the distance from New Jersey to Oklahoma is significant, as discussed above, distance alone is no longer a significant consideration (and less so that the year 2000 when *Peay* was authored). This factor does not weigh in Defendant Cotogno's favor.

3.    Judicial Economy.

Judicial economy greatly weighs in favor of this matter being fully litigated in Oklahoma. This Court already has personal jurisdiction over multiple Defendants, and the case has been ongoing for nearly three years. As discussed above, "[n]either justice, nor judicial economy would be served by forcing Plaintiff[] to fracture [its] claims across multiple forums to reach the various Defendants." *JMF Med., LLC*, 490 F. Supp. 3d at 970.

17

4.    The Probable Situs of Discovery Proceedings.

Some discovery will take place in Oklahoma. That is where Plaintiff is located. Some will take place in Florida. That is where Defendant Robertson is located and where Optimum Bank (the bank into which Plaintiff's money was transferred) is located. Some discovery may take place in New York, which is where some Defendants were apparently located when the fraud was perpetrated. Some discovery will likely take place in New Jersey, which is where the majority of the defendants are located. It is not insignificant that parties and attorneys are required to travel less as depositions are sometimes taken by videoconferencing. Considering all of these facts, this factor does not weight in Defendant Cotogno's favor.

5.    The Nature of the Defendant's Activities and Its Impact Beyond His State's Borders.

As described above, Defendant Cotogno was a part of a nationwide conspiracy that defrauded over 1,000 people out of millions of dollars. This factor weighs heavily against Cotogno.

All of these factors must be weighed in light of Defendant Cotogno's burden to show that this forum will "make litigation so gravely difficult and inconvenient that he unfairly is at a severe disadvantage in comparison to his opponent" *Peay*, 205 F.3d at 1212. "It is only in highly unusual cases that inconvenience will rise to a level of constitutional concern."*Id.* Defendant Cotogno has not met his heavy burden of showing that this is one of those highly unusual cases.

18

B. **Even if Defendant Cotogno Had Shown This to be a Highly Unusual Case Where His Inconvenience Rises to the Level of a Constitutional Concern, Any Infringement on Defendant Cotogno's Liberty Is Justified by Government Interests.**

If a defendant successfully demonstrates that litigation in the plaintiff's chosen forum is unduly inconvenient, "jurisdiction will comport with due process only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant." *Peay* 205 F.3d at 1213. There is no need to take this additional step in a case like this, where Defendant Cotogno has not met his burden set out in Part III(A) above. Id. at 1214. Nonetheless, the Tenth Circuit has described considerations to be given when weighing the government's interests against a defendant's liberty interest:

> To determine whether infringement on the defendant's liberty is justified sufficiently by government interests, courts should examine the federal policies advanced by the statute, the relationship between nationwide service of process and the advancement of these policies, the connection between the exercise of jurisdiction in the chosen forum and the plaintiff's vindication of his federal right, and concerns of judicial efficiency and economy. Where ... Congress has provided for nationwide service of process, courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives.

*Peay* 205 F.3d at 1213.

Considering these factors, any burden on Defendant Cotogno is outweighed by the government's interest in this matter being litigated in the current forum. As explained above, the Tenth Circuit has explained that civil RICO's nationwide service of process should be liberally construed to effectuate RICO's remedial purposes, which is to eradicate organized crime. *Cory*, 468 F.3d at 1231-32. Here Defendants engaged in organized crime that defrauded small business throughout the United States out of millions of dollars.

19

Requiring one of the victims of that organized crime to split his claims in courts in Oklahoma, Florida, and New Jersey does not further the remedial purposes of the statute.

Vindication of Plaintiff's federal rights will best occur in this forum. Forcing Plaintiff to litigate in multiple forums will expose plaintiff to the application of different circuit law to his federal claims and different state law to his state claims. It may expose Plaintiff to defenses concerning splitting a cause of action. It may result in some of Plaintiff's claims being barred by a statute of limitations. Here, in this district, Plaintiff's federal rights can be vindicated by all issues against all Defendants being litigated in one case. Concerns of judicial efficiency and economy most assuredly weigh in favor of this Court exercising personal jurisdiction over Defendant Cotogno.

## CONCLUSION

In summary, this Court has jurisdiction over at least one defendant. Considering all the facts and circumstances, the interests of justice requires that this Court exercise jurisdiction over all defendants. This innocent Plaintiff should not face the burden and uncertainties of pursuing claims against different defendants in multiple forums. Defendant Cotogno has not met his heavy burden of showing that this is one of the rare cases where his inconvenience rises to the level of a constitutional concern. Even if Defendant Cotogno had met that burden, the government's interest in this matter being litigated in one forum (including the government's interest in allowing plaintiff to vindicate his federal rights) outweigh any inconvenience to Defendant Cotogno. Therefore, this Court has personal jurisdiction over Defendant Cotogno, and Defendant Cotogno's motion to dismiss should be denied.

In the alternative, Plaintiff respectfully requests leave to conduct jurisdictional discovery in the form of written discovery and depositions of Defendants. However, Plaintiff is cognizant of LCvR7.1(c) and will, therefore, file a separate motion in this regard.

Respectfully submitted,

_/s Jim D. Dowell_____

Jim D. Dowell, OBA #19447
Jim D. Dowell, P.C.
2315 DOWNS AVENUE SUITE 220
WOODWARD, OKLAHOMA 73801
TELEPHONE: 580-254-0081
FACSIMILE: 580-254-0037
jdowell@dowelllaw.net
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that on this 9th day of September, 2025, I caused this document to be filed and served through the ECF system on the following persons:

Dylan D. Erwin, OBA #31987
Holladay Chilton & Erwin, PLLC
204 N. Robinson Suite 1550
Oklahoma City, OK 73102
T: (405) 236-2343
derwin@holladaychilton.com
*Attorney for Defendant James Missry*

Fred A. Liebrock, OBA #14146
Phillips Murrah, P.C.
424 NW 10th St. Suite 300
Oklahoma City, OK 73103
T: 405-235-4100
faleibrock@phillipsmurrah.com
*Attorney for Defendant Paul Cotogno*

Gene W. Rosen
Gene Rosen Law Firm, P.C.
200 Garden City Plaza, Suite 405
Garden City, New York 11530
T: (212) 529-3600 Ext. 101
Gene@GeneRosen.com
*Attorney for Defendants Joseph Aaron Rosenthal, ASC Group, and LLC aka Delta Fund Grp aka DFG*

_/s Jim D. Dowell_____

Jim D. Dowell

21