## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

DUSTIN DONLEY                         )
CONSTRUCTION SERVICES, LLC,           )
                                      )
    Plaintiff,                  )
                                      )    Case No. CIV-22-1010-SLP
v.                                    )
                                      )
JOSEPH AARON ROSENTHAL, an            )
individual, et al.,                   )
                                      )
    Defendants.                 )

## O R D E R

Before the Court are multiple motions to dismiss filed by Defendants Mathew Robertson (Robertson), James Missry (Missry), and Paul Cotogno (Cotogno), as well as corresponding motions filed by Plaintiff Dustin Donley Construction Services, LLC.

First, Defendant Robertson filed a Motion to Dismiss for Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2) and Brief in Support [Doc. No. 67] to which Plaintiff responded [Doc. No. 68].[1]  Plaintiff filed a corresponding Third Conditional Motion for Leave to Conduct Jurisdictional Discovery [Doc. No. 69] and Robertson responded, *see* [Doc. No. 70].

Second, Defendant Missry filed a Motion to Dismiss for Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2) and Brief in Support [Doc. No. 41], to which

---

[1] Citations to the parties' briefing submissions reference the Court's ECF pagination.

Plaintiff filed a Response, *see* [Doc. No. 45], and Missry replied, *see* [Doc. No. 50]. Plaintiff filed a corresponding Conditional Motion for Leave to Conduct Jurisdictional Discovery [Doc. No. 46] and Missry responded, *see* [Doc. No. 56].

Finally, Defendant Cotogno filed a Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 44], to which Plaintiff responded, *see* [Doc. No. 52] and Cotogno replied, *see* [Doc. No. 54].[2]  Plaintiff filed a corresponding Second Conditional Motion for Leave to Conduct Jurisdictional Discovery [Doc. No. 53] and Cotogno responded, *see* [Doc. No. 55].  Plaintiff also filed a Motion to Strike Defendant Paul Cotogno's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 51], to which Cotogno responded, *see* [Doc. No. 57].[3]

---

[2] In the reply brief, Cotogno indicates that he "adopts as his own the arguments made by co-Defendant James Missry" in Missry's reply brief [Doc. No. 50].  [Doc. No. 54] at 1.  Accordingly, the Court will construe the arguments made by Missry in his reply brief apply equally to Cotogno.

[3] The Court does not find that striking Cotogno's Motion is appropriate in these circumstances. Several courts have construed Fed. R. Civ. P. 12 as not placing a 21-day time limit on filing a motion under Rule 12(b).  *See, e.g., Thompson v. Advoc. S. Suburban Hosp.*, No. 15-CV-9184, 2016 WL 4439942, at *3 (N.D. Ill. Aug. 23, 2016) ("under the plain language of Rule 12(b), a motion asserting a 12(b) defense may be filed at any time before a responsive pleading has been filed") (citing *Hedeen Int'l, LLC v. Zing Toys, Inc.*, 811 F.3d 904, 905 (7th Cir. 2016)); *see also Copeland v. C.A.A.I.R., Inc.*, No. 17-CV-564-TCK-JFJ, 2019 WL 4307125 at *13 (N.D. Okla. Sept. 11, 2019) ("motions to dismiss are not responsive pleadings" for purposes of Fed. R. Civ. P. 12). Additionally, even if the time limit did apply, Plaintiff has not shown any prejudice as a result of the delayed filing.  This Court has inherent authority to manage its docket, including its discretion to rule on late motions.  *See United States v. Schneider*, 594 F.3d 1219, 1226 (10th Cir. 2010); *see also Pepe v. Koreny*, No. 99-1063, 1999 WL 686836 at *2 (10th Cir. Sept. 3, 1999) (unpublished) ("The inherent authority of a district court to manage its docket includes discretion to grant or deny continuances or extensions of time.").  Certainly, "[t]hat does not mean the time for filing [ ] a [Rule 12(b)] motion is unbounded . . . ." *Hedeen*, 811 F.3d at 906.  The Court strongly admonishes counsel against the practice of filing Rule 12(b) motions more than 21 days after being initially

Upon review of the submissions of the parties, the Court finds that the exercise of personal jurisdiction over Defendants Robertson, Missry, and Cotogno is proper.

## I.    <u>Introduction</u>

Dustin Donley Construction Services, LLC brings this action for damages suffered resulting from a fraudulent scheme allegedly conducted by all the Defendants. *See generally* Second Am. Compl. [Doc. No. 33]. Plaintiff brings claims relating to violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-68, as well as state law claims, against all of the Defendants, collectively.

Defendants Robertson, Missry, and Cotogno have all moved to dismiss the claims against them for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). In their respective Motions to Dismiss, Robertson, Missry and Cotogno all assert the Court cannot exercise personal jurisdiction over them because the respective Defendants lack sufficient contacts with the state of Oklahoma. *See* Mot. [Doc. No. 67] at 7; Mot. [Doc. No. 41] at 6; Mot. [Doc. 44] at 6. Plaintiff argues Robertson has sufficient minimum contacts with the State of Oklahoma for the exercise of personal jurisdiction to be proper. *See* Resp. [Doc. No. 68] at 6. Furthermore, Plaintiff argues that RICO provides a statutory basis for

---

served. Accordingly, Plaintiff's Motion to Strike Defendant Paul Cotogno's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 51] is denied.

the exercise of personal jurisdiction over Missry and Cotogno.[4] *See* Resp. [Doc. No. 45] at 6; Resp. [Doc. No. 52] at 6.

## II.  <u>Governing Law</u>

Plaintiff has the "light" burden to demonstrate that this Court has personal jurisdiction over Defendants. *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008).  A motion to dismiss decided without an evidentiary hearing requires Plaintiff to make only a prima facie showing that jurisdiction exists.  *Wenz*, 55 F.3d at 1505.  Plaintiff must establish a prima facie showing with respect to each claim and each defendant.  *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020); *Newsome v. Gallacher*, 722 F.3d 1257, 1265-66 (10th Cir. 2013).  This showing can be made "through affidavits or other written materials." *Dental Dynamics*, 946 F.3d at 1228.  Uncontroverted allegations in the complaint are taken as true. *Wenz*, 55 F.3d at 1505.  If the other side presents conflicting affidavits, factual disputes are resolved in favor of the plaintiff.  *Id*.  "However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true."  *Id*.

In federal question cases, "the court must determine (1) whether the applicable statute potentially confers jurisdiction" by authorizing service of process on the defendant and (2) "whether the exercise of jurisdiction comports with due process." *E.g.*, *Peay v.*

---

[4] Plaintiff argues in the alternative that the exercise of personal jurisdiction over Robertson is proper under RICO.  *See* Resp. [Doc. No. 68] at 9.  Missry and Cotogno addressed the application of RICO in their reply briefs, *see* Reply [Doc. No. 50].  Robertson did not address the application of RICO.

*BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (citations omitted); *see also Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  Once it has been established that a federal statute allows for service of process on the defendant, it is the defendant's burden to demonstrate "the exercise of jurisdiction in the chosen forum 'will make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe disadvantage in comparison to his opponent.'" *Id.* at 1212 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1987)).

If the defendant has demonstrated that the "forum is unduly inconvenient, then 'jurisdiction will comport with due process only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant.'" *Id.* at 1213 (citing *Republic of Panama*, 119 F.3d at 948).  In evaluating this issue,

> courts should examine the federal policies advanced by the statute, the relationship between nationwide service of process and the advancement of these policies, the connection between the exercise of jurisdiction in the chosen forum and the plaintiff's vindication of his federal right, and concerns of judicial efficiency and economy.  Where . . . Congress has provided for nationwide service of process, courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives.

*Id.* (quoting *Republic of Panama*, 119 F.3d at 948).

### III.    <u>Factual and Procedural History</u>

This matter has an extensive factual and procedural history spanning more than three years.  Accordingly, the Court only summarizes the necessary history relevant to the legal issues presented below.

### A. The Fraud Scheme

Dustin Donley Construction Services, LLC is an Oklahoma limited liability company whose majority owner is Dustin Donley, an Oklahoma resident.[5] *Id*. at ¶ 14.  In February of 2022, Mr. Donley interacted with a web-based advertisement regarding business lines of credit as he was seeking financing for Plaintiff.  *Id*. at ¶ 15.  On February 10, 2022, Mr. Donley received text messages and phone calls from a phone number with a Miami-Dade, Florida area code.  *Id*. at ¶¶ 17-18.  The individual, who purported to be "Jerry Thomas" from an Oak Capital financial group, stated that Plaintiff's business file was "submitted for funding" and that Plaintiff was approved for a $10,000,000 line of credit.  *Id*.  After engaging in several calls on February 10, Thomas discussed the terms for the line of credit with Mr. Donley and introduced him to an individual identified as "Jeff Greene." *Id*. at ¶ 19-20.  That same day, Thomas sent an email to Mr. Donley regarding the discussed terms and conditions of the line of credit and "gone ahead and had the funds allocated by [his partners]." *Id*. at ¶¶ 21-22 (brackets in original).  Attached to the email was a "Revolving Credit Agreement" for $10 million, which was signed by Greene on

---

[5] To avoid confusion, Dustin Donley himself is hereinafter referred to as "Mr. Donley." The business itself is referred to as "Plaintiff."

behalf of Pine Equities. *Id.* at ¶¶ 23-25. On February 11, 2022, Mr. Donley used the DocuSign web program to execute and return the Revolving Credit Agreement to Jerry Thomas. *Id.* at ¶ 27. Subsequently, Thomas and Greene called Mr. Donley and "explained that Plaintiff needed to build a credit history with a firm related to Oak Creek [sic] in order for the line of credit to be funded." *Id.* at ¶ 28. Thomas and Greene further "explained [ ] Plaintiff needed to establish this credit history" with Delta Fund Group (DFG) "by signing relevant documents, [ ] accepting funds into Plaintiff's [bank] account and then allowing those funds to be withdrawn from Plaintiff's account" via ACH withdrawals. *Id.* at ¶ 29. Thomas and Greene also represented that Plaintiff would wire funds from "Plaintiff's account to DFG" to help establish the credit history and that "DFG would refund the money provided by Plaintiff once the line of credit was established." *Id.* at ¶¶ 30-31. On February 15, 2022, DFG transferred $120,000 to Plaintiff's bank account at a bank located in Enid, Oklahoma (the Bank Account). *Id.* at ¶ 36. On February 16 and 17 of 2022, DFG made two $8,994 ACH withdrawals out of the Bank Account. *Id.* at ¶ 37-38. Mr. Donley was then sent, via email, "wiring instructions for Plaintiff to wire $188,874" to a purported DFG account at Optimum Bank, a Florida bank. *Id.* at ¶¶ 39-40, 42. On February 18, 2022, Plaintiff wired that amount to the Optimum Bank account. *Id.* at 41. Between February 18 and March 14 of 2022, DFG continued to make ACH withdrawals out of the Bank Account and sent Mr. Donley additional documents to sign via DocuSign. *Id.* at ¶¶ 41-51. During this period, Thomas and Greene assured Mr. Donley via text messages and phone calls that the withdrawals were being made to establish a credit history. *Id.* On March 15, 2022, Plaintiff wired a further $44,970 to DFG pursuant to Thomas' and Greene's instructions.

*Id*. at 52. Mr. Donley and Thomas exchanged text messages between March 16 and March 18 regarding the status of the purported line of credit, with Thomas and Greene never contacting Mr. Donley, nor any other employees of Plaintiff, after March 18, 2022. *Id*. at 53-56.  Plaintiff was never provided with a line of credit.  *Id*. at ¶ 58.

### B.  Procedural History

Plaintiff filed a Complaint on November 28, 2022, naming John Does as Defendants due to the fraudulent nature of the names of the individuals and businesses involved in the transactions.  *See* Compl. [Doc. No. 1].  After conducting discovery, Plaintiff was able to find the purported DFG bank account at Optimum Bank was owned by Defendant ASC Group, LLC (ASC).  *See* Second Am. Compl. [Doc. No. 33] at ¶ 60-61.  It was also discovered that Defendant Joseph Aaron Rosenthal (Rosenthal) signed the bank account documents on behalf of ASC and that Rosenthal was the sole member of ASC.[6] *Id*. at ¶ 61-63.  After being named in Plaintiff's Amended Complaint, ASC and Rosenthal filed a Motion to Stay Action and Compel Arbitration on May 17, 2023.  *See* Am. Compl. [Doc. No. 10]; Motion [Doc. No. 18].[7]  On August 14, 2024, the Court granted the Motion to Stay Action and Compel Arbitration and the matter was stayed pending the completion of arbitration proceedings.  *See* Order [Doc. No. 27].

---

[6] Rosenthal is alleged to be a "citizen of New Jersey." *Id*. at ¶ 4.  Because Rosenthal is alleged to be the sole owner of ASC, ASC is likely deemed to be a citizen of New Jersey.

[7] On August 12, 2024, the Court dismissed the John Doe Defendants named in Plaintiff's Amended Complaint for failure to timely effect service of process pursuant to Fed. R. Civ. P. 4(m).  *See generally* Order [Doc. No. 26].

Plaintiff proceeded to arbitrate his claims against ASC and Rosenthal in the State of New York. *See generally* Arbitration Award [Doc. No. 29-1].  An award was made in favor of Plaintiff and against, in part, Rosenthal and ASC on April 28, 2025. *See id.* at 4.  While the arbitration was pending, the United States filed a Criminal Complaint in the United States District Court of the District of New Jersey. *See* Crim. Compl. [Doc. No. 29-2]. [8] The Criminal Complaint, based on the sworn statement of Federal Bureau of Investigation Special Agent Anthony Czajkowski, alleges that Rosenthal, Robertson, Missry, Cotogno Nicholas Smith (Smith), Blaise Cotogno, Adam Akel (Akel), and Nicholas Winter (Winter) engaged in an interstate wire fraud conspiracy from June 2020 through July 2024.[9] *See id.* at 1-2.  Similar to the above-described conduct, the individual Defendants allegedly:

> worked with each other and others to enrich themselves by defrauding small business owners interest in obtaining financing for their businesses.  The Defendants targeted victims across the United States  .  .  .  .  Through misrepresentations and falsehoods, the Defendants promised these victims that in exchange for money provided upfront, the Defendants would ultimately extend a loan or line of credit to the victims.  Once a victim provided the upfront payment to the Defendants, the Defendants did not extend a loan or line of credit to the victim.  Instead, the Defendants kept the victims' money and broke off communication.

*Id.* at ¶ 1.  Plaintiff incorporates the Criminal Complaint by reference into the Second Amended Complaint. *See* Second Am Compl. [Doc. No. 33] at ¶ 67.  Relevant to this

---

[8] While the Criminal Complaint was filed under seal on April 11, 2025, the United States Attorney's Office for the District of New Jersey unsealed the Criminal Complaint on April 17, 2025.

[9] Robertson, Cotogno, and Blaise Cotogno are also charged with an additional count of wire fraud conspiracy for conduct occurring between November 2022 through July 2024. *See id.* at 3.

proceeding, Plaintiff represents that Mr. Donley is "Victim-1" in the Criminal Complaint. *See id*. at ¶ 71; Crim. Compl. [Doc. No. 29-2] at ¶¶ 12-16. Additionally, Robertson is alleged to have likely been posing as Jerry Thomas during communications with Mr. Donley. *See* Crim. Compl. [Doc. No. 29-2] at ¶¶ 12, 16.[10]

On May 19, 2025, Plaintiff filed a Motion to Reopen Case to Confirm Arbitration Award and Add Additional Defendants [Doc. No. 29]. Plaintiff sought to reopen the case so that he could file a motion to confirm the arbitration award against ASC and Rosenthal, as well as a motion for leave to file a second amended complaint that included the additional individual Defendants named in the Criminal Complaint. *See generally* Mot. to Reopen [Doc. No. 29]. The Court granted the Motion to Reopen, *see* Order [Doc. No. 30], and Plaintiff subsequently filed the Second Amended Complaint [Doc. No. 33] on July 10, 2025. The Second Amended Complaint names Rosenthal, ASC, Robertson, Smith, Missry, Cotogno, Blaise Cotogno, Akel, and Winter as Defendants. *See* Second Am. Compl. [Doc. No. 33] at 1-2. Other than Defendant Robertson, the remaining Defendants are alleged to be citizens of either New Jersey or New York.[11]

IV.   **Analysis**

---

[10] The criminal proceeding involving the Individual Defendants shall be referred as the "Criminal Proceeding."

[11] While the Second Amended Complaint states Defendant Robertson is a "citizen of New Jersey or New York," Defendant Robertson asserts that he is not a citizen of New Jersey, New York, nor Oklahoma. *See* Second Am. Compl. [Doc. No. 33] at ¶ 4; Mot. [Doc. No. 7] at 2.

As an initial matter, 18 U.S.C. § 1965(b) has been interpreted by the Tenth Circuit to allow for nationwide service of summonses on other defendants when "personal jurisdiction can be established over at least one defendant" and "if required by the ends of justice." *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1231 (10th Cir. 2006); *see also Hart v. Salois*, 605 Fed. App'x. 694, 699 (10th Cir. 2015) (unpublished) (applying *Cory*).

## A. Robertson's Contacts with the State of Oklahoma

Regarding the first element, personal jurisdiction must be established over one defendant based on sufficient minimum contacts with the forum. *Id*. at 1230. Because Oklahoma's long-arm statute "extends jurisdiction to the Constitution's full extent . . . . [t]he personal jurisdiction analysis here is thus a single due process inquiry." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017); *see also* Okla. Stat. tit. 12, § 2004(F); *United States v. Botefuhr*, 309 F.3d 1263, 1271 (10th Cir. 2002). To satisfy due process, Plaintiff must establish that there "exist[s] 'minimum contacts' between the defendant and the forum state." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1979)). "[T]he 'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov*, 514 F.3d at 1071 (citing *Burger King Corp.*, 471 U.S. at 472).

Plaintiff asserts that personal jurisdiction, on the basis of Oklahoma's long-arm statute, can be established over Defendants Robertson, Rosenthal, and ASC. Robertson's

Motion to Dismiss focuses on the lack of physical contacts he has with the state of Oklahoma, including the facts that he has never: been a citizen of the state, owned property or held bank accounts in the state, nor visited the state. *See* [Doc. No. 67] at 7-8. While these arguments may defeat the exercise of general jurisdiction over Robertson, it fails to adequately address the exercise of specific jurisdiction. Notably absent from Robertson's affidavit is any representation regarding electronic contact with Oklahoma residents. The Court finds the Tenth Circuit's decision in *Dudnikov* instructive. In *Dudnikov*, the plaintiffs, Colorado residents, were selling products through a Colorado-based business on an eBay auction page. *Dudnikov*, 514 F.3d at 1068. Non-Colorado defendants, possessors of a copyright, filed a notice of copyright infringement as to an item sold by the plaintiffs. *Id*. at 1068-69. When the plaintiffs brought a declaratory judgment action in the District Court of Colorado to contest the alleged infringement, the defendants moved to dismiss based on lack of personal jurisdiction. *Id*. at 1069. The defendants asserted, in relevant part, that contacting eBay, a California company, was insufficient for the District Court of Colorado to exercise personal jurisdiction. *Id*. at 1075. Addressing this argument, the *Dudnikov* court first looked to Supreme Court precedent:

> Foreshadowing the Internet age, the [Supreme] Court noted that "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications . . . . So long as a commercial actor's efforts are "purposefully directed toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."

*Id.* at 1075-76 (quoting *Burger King Corp.*, 471 U.S. at 476). The Tenth Circuit then found that the "express aim" of the defendants to disrupt a Colorado-based sale was enough to establish personal jurisdiction and did not require the physical presence of the defendants in Colorado. *Id.* Here, we are faced with an even clearer example of "purposeful direction" by a defendant towards a plaintiff's forum.

The Second Amended Complaint alleges that Jerry Thomas of Oak Capital Group engaged in repeated phone calls, emails, and text messages with Mr. Donley, an Oklahoma resident, regarding the funding for Plaintiff, an Oklahoma limited liability company. The Criminal Complaint also describes these communications between Jerry Thomas and Mr. Donley, indicating Jerry Thomas contacted Mr. Donley "approximately 220 times" in the months of February and March of 2022. *See* Criminal Complaint [Doc. No. 29-2] at ¶ 16. Furthermore, the Criminal Complaint indicates that Robertson was "likely posing as [Jerry] Thomas" during communications with Donley. *Id.* The Court finds that the allegations brought forth by Plaintiff are sufficient to demonstrate that Robertson purposely directed activities toward the state of Oklahoma.

It is also clear that the Plaintiff's injuries complained of "arise out of" Robertson's contacts with Oklahoma. Robertson is alleged to have deliberately engaged in messages and phone calls with Mr. Donley, which resulted in Plaintiff wiring funds to a bank in Oklahoma. DFG then began to impermissibly withdraw funds from Plaintiff's bank account. Had Robertson not reached out to Mr. Donley, the resulting fraud and financial

harm to Plaintiff would not have occurred.  The Court finds that Plaintiff's harm is causally linked to Robertson's contacts with the state of Oklahoma.

Plaintiff has adequately alleged that Defendant Robertson has sufficient minimum contacts with the State of Oklahoma.[12]  Accordingly, the Court finds Plaintiff has sufficiently alleged that the exercise of personal jurisdiction over Robertson is proper and that Plaintiff is able to exercise personal jurisdiction over at least one Defendant in this matter.[13]

## B.  Ends of Justice

Because "personal jurisdiction can be established over" Robertson, the Court will next examine whether Plaintiff has demonstrated that the "ends of justice" require nationwide service of summonses over Missry and Cotogno.  *Cory*, 468 F.3d at 1231. The Tenth Circuit has described "ends of justice" as "a flexible concept uniquely tailored to the facts of each case." *Id.* at 1232.  However, the fact that a plaintiff has suffered damages and incurred litigation costs in the forum is insufficient.  *Id.*  Plaintiff asserts that he has

---

[12] Robertson raised no arguments that the exercise of personal jurisdiction would "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations and citations omitted); *see also Dudnikov*, 514 F.3d at 1080 ([W]e are cognizant of the fact that, with minimum contacts established, it is incumbent on defendants to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.") (internal quotations and citations omitted).

[13] Because the Court can exercise personal jurisdiction over Defendant Robertson, the Court need not decide whether Defendants ASC and Rosenthal have sufficient minimum contacts with the State of Oklahoma to exercise personal jurisdiction over these respective Defendants.

demonstrated the "ends of justice" require nationwide service in this matter.[14]    First, Plaintiff believes the "ends of justice" standard has been met on the basis of judicial efficiency.    Plaintiff prevailed in arbitration against Rosenthal and ASC and seeks the confirmation of the arbitration award before this Court.    *See generally* Mot.  [Doc. No. 40]. Plaintiff represents that because Rosenthal is a citizen of Florida, and the other Defendants are citizens of New Jersey, continuing to pursue the confirmation of the arbitration award while being required to pursue claims against the other Defendants in their home forums would be inefficient to both the district courts and to Plaintiff.  Furthermore, Plaintiff also posits that if it was required to litigate in separate forums, it could result in inconsistent results and different laws being applied to the causes of action.  Plaintiff also represents that it would be unjust to allow Defendants to control the forum of this suit where the alleged wrongdoers used aliases to frustrate Plaintiff's ability to seek redress.  The Court finds Plaintiff has demonstrated the ends of justice require nationwide service over the remaining Defendants in the matter.

### C. Due Process Considerations for Missry and Cotogno

Because the Court has found the RICO act "'potentially confers jurisdiction' by authorizing service of process on" Defendants, the Court will next address whether Defendants Missy and Cotogno have demonstrated that the exercise of personal jurisdiction "burdens [them] with constitutionally significant inconvenience." *Klein v. Cornelius*, 786

---

[14] None of the Defendants dispute Plaintiff's assertions as to the "ends of justice" requirement.

F.3d 1310, 1317-18 (10th Cir. 2015).  To determine whether a defendant has met their

burden, the following factors must be evaluated:

> (1) the extent of the defendant's contacts with the place where
> the action was filed; (2) the inconvenience to the defendant of
> having to defend in a jurisdiction other than that of his
> residence or place of business . . . ; (3) judicial economy; (4)
> the probable situs of the discovery proceedings and the extent
> to which the discovery proceedings will take place outside the
> state of the defendant's residence or place of business; and (5)
> the nature of the regulated activity in question and the extent
> of the impact that the defendant's activities have beyond the
> borders of his state of residence or business.

*Peay*, 205 F.3d at 1212. (citations omitted).  Circuit courts have noted "that it is only in

highly unusual cases that inconvenience will rise to a level of constitutional concern."  *Id.*

at 1212-13 (citing *Republic of Panama*, 119 F.3d at 947).  The Court will address each

respective *Peay* factor in turn.

The Court will first look as to whether Missry and Cotogno have any substantial

contacts with the State of Oklahoma.  Missry and Cotogno both submitted affidavits

regarding their lack of contacts with the State of Oklahoma.  Both assert that they have

never been to the State of Oklahoma, conducted business within the State, or contacted any

members or employees of Plaintiff.  *See* Affidavit of Missry [Doc. No. 41-1] at 2; Affidavit

of Cotogno [Doc. No. 44-1] at 2.  Plaintiff alleges generally in the Second Amended

Complaint that the Defendants, *collectively*, engaged in a fraudulent scheme.[15]  *See* [Doc.

---

[15] While the Court is aware that the individual(s) acting under the alias of "Jeff Greene" has not
been traced, neither the Second Amended Complaint nor the Criminal Complaint allege that
Missry or Cotogno was acting as "Jeff Greene."

No. 33] at 13-15.  However, the Second Amended Complaint and the Criminal Complaint do not contain any specific factual allegations that demonstrate Missry and Cotogno had any contacts with the State of Oklahoma.  While Missry and Cotogno have established a lack of significant contacts with the State, this factor is "only one consideration" in the Court's analysis.  *Klein*, 786 F.3d at 1318; *see also Republic of Panama*, 119 F.3d at 946 ("[A] defendant's contacts with the forum state play no magical role in the Fifth Amendment analysis."); *Mighty Siren, LLC v. Bates*, No. CIV-21-788-R, 2022 WL 844200, at *3 (W.D. Okla. Mar. 21, 2022) (Contact with Oklahoma is "but one factor in considering constitutional inconvenience and contact with the forum state is not required to establish personal jurisdiction, although it is a relevant factor.") (citations and footnotes omitted).

Next, in determining the inconvenience of the forum, courts look to "(a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought . . . ." *Peay*, 205 F.3d at 1212.  As alleged in the Second Amended Complaint and the Criminal Complaint, the Defendants, including Missry and Cotogno, engaged in an interstate fraud scheme.  *See* [Doc No. 33] at ¶¶ 91-105; [Doc. No. 29-2] at ¶ 1.  Missry and Cotogno, among the other Defendants, allegedly "targeted victims across the United States", *see* [Doc. No. 29-2] at ¶ 1, by engaging in "a combination of phone calls, text messages, and emails" with victims.  *Id.* at ¶ 7.  The Defendants also "initiated thousands of interstate wire transactions" in furtherance of their scheme.  *Id.* at ¶ 11.  These allegations show that Missry and Cotogno were engaging in a clearly interstate scheme.  Furthermore,

both Missry and Cotogno have already retained local counsel in Oklahoma. *See* Entries of

Appearance [Doc. Nos. 42-43, 47]. Missry and Cotogno assert that they are forced "to split

[their] resources" and hire two sets of counsel as a result of the litigation in Oklahoma. *See*

[Doc. No. 50] at 4-5. Given the differing natures of criminal and civil proceedings, Missry

and Cotogno would still likely need to hire different lawyers and incur attorney fees in both

proceedings even if this matter was pending in New Jersey. Finally, the geographical

distance between New Jersey and Oklahoma is certainly significant. However, as the Tenth

Circuit noted, "modern methods of communication and transportation greatly reduce the

significance of this physical burden." *Peay*, 205 F.3d at 1213. Since *Peay* was decided in

2000, the ease of telecommunications has only improved, greatly reducing the burden of

geographic distance. The distance between New Jersey and Oklahoma, without more, does

not constitute constitutionally significant inconvenience for a litigant. *See*, *e.g.*, *Mighty

Siren, LLC*, 2022 WL 844200 at *3. Given the interstate nature of the scheme Missry and

Cotogno were alleged to be involved in and their access to Oklahoma counsel, the Court

finds that the second factor weighs against Missry and Cotogno. [16]

Turning to the third factor—judicial economy—the Court finds that it slightly

weighs against a finding of constitutional inconvenience. Notwithstanding the stay

pending arbitration, this matter has been before the Court since November of 2022.

---

[16] Missry and Cotogno mistakenly include judicial economy as part of the "inconvenience of
forum" analysis. *See id*. at 3-4. Missry and Cotogno argue under a heading regarding
inconvenience of the forum that it would be "bankrupting judicial economy" by having the
Defendants litigate in two separate forums. *Id*. The Court will address such arguments separately
from the "inconvenience of forum" analysis.

Plaintiff seeks to confirm an arbitration award relating to the actions of two co-Defendants, ASC and Rosenthal, in this Court.  Defendants Blaise Cotogno, Smith, and Winter have been properly served in this matter and failed to timely respond to the Second Amended Complaint.  *See* Summons [Doc. Nos. 35, 37-38].[17]  As discussed above, the Court can exercise personal jurisdiction over Defendant Robertson on the basis of his specific contacts with the state of Oklahoma.  Without including Missry and Cotogno, Plaintiff's claims against *at least* six of the nine Defendants will likely be resolved in this forum, and judicial economy would be best served by resolving claims against Missry and Cotogno in this forum as well.[18]  The Court is cognizant of the Criminal Proceeding, where all of the individual Defendants in this proceeding are named as defendants.  While there is a possibility that the same district judge could preside over both the criminal and civil proceedings in New Jersey, civil and criminal proceedings cannot simply be consolidated. The Criminal Proceeding and this matter involve wholly different procedural rules, burdens of proof, determinative facts, legal issues, and many other differences.

As to the fourth factor, the Court looks to "the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the

---

[17] While not necessary for purposes of the Motions before the Court, district courts within the Tenth Circuit have found the exercise of personal jurisdiction is proper over similar defendants in a *Peay* analysis. *See Mighty Siren*, 2022 WL 844200 at *4; *O'Neill v. California Farms, Inc.*, No. 12-CV-00676-WYD-KMT, 2013 WL 5467074, at *7 (D. Colo. Sept. 30, 2013).

[18] In the reply, Missry states that Plaintiff  "split[ ] the same issues between federal circuits" by electing to file suit in Oklahoma. [Doc. No. 50] at 4, n. 2. The Court finds the argument unconvincing.  Plaintiff elected to file a civil suit in Oklahoma in 2022, *more than two years prior* to the Criminal Complaint being filed in New Jersey.

state of the defendant's residence or place of business." *Peay*, 205 F.3d at 1212. Discovery will likely occur primarily in the states of Oklahoma, Florida, and New Jersey. Most documents at issue, including texts and emails, are likely available electronically and do not favor one forum over another. The vast majority of deponents, including Missry and Cotogno, reside in New Jersey and most depositions would likely take place in New Jersey. Plaintiff's owner, Mr. Donley, resides in Oklahoma and his deposition would occur in the forum. While a significant amount of discovery will occur outside the state of Oklahoma, Missry and Cotogno have not demonstrated how it is constitutionally inconvenient that "much of the discovery will not require [them] to travel outside of [New Jersey], where [they] reside[ ]. *Mighty Siren*, 2022 WL 844200 at *4.

As to the final factor, the Court looks to "the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business." *Peay*, 205 F.3d at 1212. [19] Missry and Cotogno raised no arguments as to the interstate effect of their alleged activities. As discussed above, Missry and Cotogno are alleged to have taken part in an extensive nationwide fraud scheme. The impact of such a scheme was clearly felt well beyond New Jersey, with "over 1,000 victims" across the United States being defrauded of "millions of dollars." [Doc. No.

---

[19] Missry and Cotogno, without citing to any authority, state that only three of the five Peay factors apply to individuals. *See* [Doc. No. 50] at 3. Despite addressing four factors (albeit as three), Missry and Cotogno failed to address the fifth factor. The Court finds that the fifth *Peay* factor is applicable to individuals. *See, e.g.*, *Pipeline Indus. Ben. Fund v. Bill Hawk, Inc.*, No. 14-CV-0217-CVE-FHM, 2014 WL 5419323, at *7 (N.D. Okla. Oct. 23, 2014) (applying fifth *Peay* factor to an individual); *Mighty Siren*, 2022 WL 844200, at *4 (same); *Touchstone Grp., LLC v. Rink*, 913 F. Supp. 2d 1063, 1073 (D. Colo. 2012) (same).

29-2] at ¶ 5.  The Court finds that the fifth factor weighs strongly against a finding of constitutionally significant inconvenience.

Taking all the factors into consideration, the Court finds that Missry and Cotogno have not met their burden of demonstrating the exercise of personal jurisdiction over them is a constitutionally significant inconvenience.  Missry's and Cotogno's circumstances are not so "highly unusual" for the Court to find the exercise of personal jurisdiction to be violative of the Fifth Amendment's Due Process Clause.

Because the Court finds that Missry and Cotogno have not demonstrated that the Court's exercise of personal jurisdiction over them is unduly inconvenient, the Court does not need to evaluate the federal interests at issue.  *See, e.g., Peay*, 205 F.3d at 1213-14; *Republic of Panama*, 119 F.3d at 946 ("[C]ourts must engage in this balancing only if a defendant has established that his liberty interests actually have been infringed.") (citations omitted).

## V.   <u>CONCLUSION</u>

IT IS THEREFORE ORDERED AS FOLLOWS:

1.   Defendant James Missry's Motion to Dismiss for Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2) and Brief in Support [Doc. No. 41],  Defendant Paul Cotogno's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 44], and Defendant Mathew Robertson's Motion to Dismiss for Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2) and Brief in Support [Doc. No. 67] are DENIED.

2.     Plaintiff's Motion to Strike Defendant Paul Cotogno's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 51] is DENIED.

3.     Plaintiff's Conditional Motions for Leave to Conduct Jurisdictional Discovery [Doc. Nos. 46, 53, 69] are DENIED as MOOT.

IT IS SO ORDERED this 3rd day of March, 2026.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE